John J. Dillon, J.
The question presented in this proceeding (CPLR, art. 78) is whether certain actions taken by the respondents, who comprise the Board of Education of a Central School District in Rockland County, are in violation of the religious freedom provisions of the First Amendment.
It is common knowledge that certain portions of Rockland County have, undergone a phenomenal growth in population within recent years. As a result great additional burdens have been imposed upon the public school system. The School District operated by the respondents has been seriously affected. New school buildings cannot be built fast enough to accommodate the huge increase in school population, and the respondents have been forced to rent temporarily and to utilize any additional space that can be found. In past years students have been housed in such unlikely accommodations as fire houses and mattress factories.
During the past Summer a serious emergency has developed. An additional 882 pupils have presented themselves for public school instruction, requiring an increase of 36 classrooms. At the present time the School Board is constructing two new elementary schools, and is enlarging two others. But these new facilities will not be ready for occupancy for some five or six months. Faced with an emergency, the board looked about for available temporary quarters. Among other places it leased existing classrooms in buildings owned by St. Joseph’s Catholic Church and Temple Beth El, both located in Spring Valley. This has been done with the approval of the State Department of Education. A total of 14 classrooms, accommodating 371 students, are available on these two properties. About 22 additional classrooms have been rented elsewhere. The petitioners challenge the action of the School Board in renting classrooms on Catholic and Jewish properties as a violation of those provisions of the First Amendment which prohibit an establishment of religion or any interference with the free exercise thereof.
The building leased from St. Joseph’s Church is immediately adjacent to the church itself (Exhibit B). It was formerly used as a parochial school, but is no longer in use for that purpose because the church has constructed a new school building. All religious emblems have been removed from both the interior and exterior of the structure. In this connection it should be noted that the cross and sign which appear on the school building in Exhibit B annexed to the petition have been removed since the photograph was taken. Of course, the crosses still remain on the adjacent church, which is no part of the leased property. The church and school are separate buildings. There *662 is no means of access from one building to the other. A connecting passageway between them has been closed up.
The rooms leased from Temple Beth El are a part of the long structure shown in petitioners ’ Exhibit B, being within the wing on the extreme right of the picture. There are no religious emblems either within or outside of that wing, although a modernized version of a six-pointed star appears on .the exterior wall of the opposite wing, no part of which is leased to the School Board. There is no interior means of access between the two wings.
It appears without dispute that no religious instructions will be given in these schoolrooms. The course of instruction will be the same as that given in any other public school. The owners of the property will exercise no control over the operation. The teaching will be done by regularly employed public school teachers. No pictures, statues or other religious emblems will be displayed and no religious activities will be held in any part of the leased premises.
The petitioners argue that their children are being compelled to get their schooling in buildings which are in fact churches, or which are in any event religious schools. Such cases as Everson v. Board of Educ. (330 U. S. 1) and McCollum v. Board of Educ. (333 U. S. 203) are cited in support of the petitioners’ position, but it is perfectly obvious that the factual situations in those cases were totally different from those presented here. The question in the Everson case was whether the State, in providing bus service to religious schools, was taxing its citizens for the benefit of religion. The question was answered in the negative; but no such question is presented here anyway, for the petitioners expressly say in their memorandum of law that “ we do not contend that the fact that rental is paid to the church and synagogue makes this a violation of church-state separation.” The question in the McCollum case bears some resemblance to that presented here, but it is not quite the same question. In that case the complaint was that secular school property was being used for a religious purpose; and the Supreme Court agreed that this could not lawfully be done. Here the complaint is that religious property is being used for a secular purpose. This brings us back to the question whether, as the petitioners contend, the schoolrooms rented from the church and synagogue are in fact religious buildings.
To say that these rooms are churches is too far-fetched for serious consideration. Without resorting to dictionary definitions, it is common knowledge that a church is a structure in which some sort of religious services are held. A school does not *663 become a church because a religious corporation owns it, or because there is a church nearby. The alternative argument is that if these schoolrooms are not churches they are still “ religious schools.” The court is in some doubt as to what the petitioners mean by the term ‘ ‘ religious schools. ’ ’ But such a characterization must mean that the school is one in which religion is taught or in some manner inculcated, or which is at least operated by members of a religious sect. The papers before the court eliminate all these possibilities in this case.
A useful test in cases of this kind may be found in Two Guys v. McGinley (366 U. S. 582) which dealt with Sunday closing laws. In holding that such laws are not in violation of the First Amendment, the court said (p. 598): “we hold that neither the statute’s purpose nor its effect is religious.” The present action of the respondents should be judged on that basis, and the question to be asked is whether the rental of the school facilities from the church and synagogue had a religious purpose or will have a religious effect.
It seems to be true beyond the possibility of cavil that the respondents’ purpose in renting the classrooms was to carry out the mandate of section 1709 of the Education Law, which requires boards of education “ to make provision for the instruction of pupils ” (subd. 5). They may not only build schoolhouses (subd. 6), but are also required “ to hire rooms in which to maintain and conduct schools when the rooms in the schoolhouses are overcrowded ” (subd. 7). Certainly the respondents, in acting in accordance with the statutory command, could have had no religious motive.
The remaining question is whether their action has a religious effect. All religious emblems have been removed from the St. Joseph school building and from the schoolroom wing of Temple Beth El. There is criticism, in the first case, that there are bells on the St. Joseph building. There is nothing religious about a bell. The little red schoolhouse of our ancestors frequently had a bell to summon the children to school. It is said also that there are crosses on the adjoining church and a six-pointed star on the opposite wing of the temple, which the children are bound to see. It may be doubted that the constitutional requirement obligates the school authorities to insulate the pupils so carefully as to prevent them from seeing religious emblems on other properties. Such a ruling would lead to strange results. Public schools could then only be built out of sight and beyond earshot of churches and other religious structures. School buildings would have to be torn down if a church should later be constructed next door or on an adjoining block. *664 School buses would have to be routed so as not to pass a church on the way to and from school. We hear much about the “ wall of separation ’ ’ between the State and the church; but it seems most unlikely that the framers of the First Amendment intended the wall to be so impenetrable that a school child must be kept in ignorance of the fact that there is such a thing as religion, or that there are other religions besides his own, or that religious denominations commonly have distinctive symbols. Such an attitude on the part of the State would be tantamount to a governmental pronouncement that religion has a contaminating influence upon the young. It would put the government in direct opposition to religion. It has been said many times (in the McCollum case, for example) that the State’s attitude should be one of neutrality, but not of hostility. “ Separation of church and State does not mean that every State action remotely connected with religion must be outlawed ” (Matter of Zorach v. Clauson, 303 N. Y. 161, 172, affd. 343 U. S. 306).,
The court concludes that the action of the respondents was not unlawful, and therefore denies the application and dismisses the petition.